UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

QUINTIN KEENE,

                                Plaintiff,

         v.

THE CITY OF ROCHESTER, a municipal entity,
POLICE OFFICER MARIO MASIC, IBM # 1841,
POLICE OFFICER MARK J. LEMBKE, POLICE
OFFICER JASON PRINZI, POLICE OFFICER
BRYAN A. BOSKAT, POLICE OFFICER LUCAS C.
BURRITT, POLICE OFFICER DAVID T. SEITZ,
POLICE OFFICER PATRICK GIANCURSIO,
POLICE OFFICER WILLIAM WAGNER, POLICE
OFFICER JOEL WITTMAN, SERGEANT JAMES
INGERICK, SERGEANT RIVERS, and Police
Officers "JOHN DOES 1-10" (names and numbers of
whom are unknown at present), and other unidentified
members of the Rochester Police Department,

                                Defendants.

_____

MEMORANDUM OF LAW
IN SUPPORT OF
DEFENDANTS' MOTION
FOR PARTIAL DISMISSAL
OF THE FIRST AMENDED
COMPLAINT

Case No. 17-cv-6708

## PRELIMINARY STATEMENT

Plaintiff alleges that, on September 18, 2014, he was arrested by Rochester Police Officer Mario Masic, and that Masic and additional defendant officers used excessive force against him to effect his arrest. Defendants moved to dismiss certain of plaintiff's claims on October 13, 2017. On December 8, 2017, plaintiff filed an amended complaint, which added a seventh claim for relief, and a handful of other allegations. Defendants now move to dismiss plaintiff's first claim for relief alleging a general deprivation of federal rights, and his sixth and seventh claims for relief for municipal liability against the City of Rochester.

## STATEMENT OF FACTS

The following facts are drawn from the first amended complaint ("FAC"), which is annexed to the Declaration of Patrick Beath ("Beath Decl.") as Exhibit A, and are assumed to be true for the purposes of this motion only.  On the afternoon of September 18, 2014, a woman called 911 to report that a black male dressed in gray jeans and a gray jacket was outside of a laundromat arguing with a homeless man.  FAC ¶ 36.  Officer Mario Masic responded to the laundromat, entering with his gun drawn.  FAC ¶ 35.  The only person in the laundromat at that time was plaintiff Quintin Keene, a black male dressed in gray sweatshirt and black sweatpants.  FAC ¶¶ 32-34.  Officer Masic "rushed upon [Mr. Keene], grabbed him, picked him up, slammed him onto a table and then into a wall, punched him several times in the head and body, and then pepper sprayed him."  FAC ¶ 2.  "After Defendant MASIC pepper sprayed Mr. Keene, Defendants POLICE OFFICER MARK J. LEMBKE, POLICE OFFICER JASON PRINZI, POLICE OFFICER BRYAN A. BOSKAT, POLICE OFFICER LUCAS C. BURRITT, POLICE OFFICER DAVID T. SEITZ, POLICE OFFICER PATRICK GIANCURSIO, POLICE OFFICER WILLIAM WAGNER, POLICE OFFICER JOEL WITTMAN, SERGEANT JAMES INGERICK, SERGEANT RIVERS (collectively, "Defendant RPD OFFICERS") arrived at the scene, entered the laundromat, grabbed Mr. Keene, slammed his body onto the ground, and placed handcuffs upon Mr. Keene's wrists."  *Id.*  Officers struck Mr. Keene on the head and body after he was in handcuffs, and Officer Masic sprayed him with pepper spray again.  FAC ¶ 3.

Mr. Keene was charged with obstruction of governmental administration and resisting arrest.  FAC ¶ 55.  Mr. Keene subsequently accepted an adjournment in contemplation of dismissal, and the charges were dismissed on November 30, 2015.  FAC ¶ 86.

Mr. Keene now brings claims for false arrest, excessive force, failure to intervene, and denial of his fair trial rights.  Defendants move to dismiss plaintiff's first claim for general deprivation of federal rights, and his sixth and seventh claims for municipal liability.

## STANDARD FOR MOTION TO DISMISS

"In deciding whether to grant a motion to dismiss for failure to state a claim, the court must accept the factual allegations contained in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Foster v. Humane Soc'y of Rochester & Monroe County, Inc.*, 724 F. Supp. 2d 382, 388 (W.D.N.Y. 2010) (Larimer, J.). "At the same time, however, 'a plaintiff's obligation … requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.'" *Foster*, 724 F. Supp. 2d at 382 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)). "Thus, where a plaintiff 'has not nudged his claims across the line from conceivable to plausible, his complaint must be dismissed.'" *Id.* at 388 (quoting *Twombly*, 550 U.S. at 570). "A 'plausible' entitlement to relief exists when the allegations in the complaint move the plaintiff's claims across the line separating the 'conclusory' from the 'factual,' and the 'factually neutral' from the 'factually suggestive.'" *Id.*   "Although plausibility is not a 'probability requirement,' [p]laintiffs must allege facts that permit 'more than a sheer possibility that a defendant has acted unlawfully.'" *Turkmen v. Hasty*, 789 F.3d 218, 233 (2d Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).  "In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. Westpoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991).

3

**ARGUMENT**

**I.      Plaintiff's Claim for General Deprivation of Rights Fails**

Plaintiff's first cause of action alleges a general deprivation of federal rights under §
1983, but fails to identify any specific actions of defendants resulting in any particular injury to
plaintiff.  Rather, the claim appears to be a "catch all" claim, acting as a preview for the more
specifically-pled claims that follow.  As the Courts have repeatedly stated, § 1983 "is not itself a
source of substantive rights, but a method for vindicating federal rights elsewhere conferred by
those parts of the United States Constitution and federal statutes that it describes."  *Baker v.
McCollan*, 443 U.S. 137, 145 n. 3 (1979).  Vaguely pled, this first cause of action fails to put any
defendant on notice of what purported action caused a violation of what purported federal right
and, as such, fails under *Twombly* and *Iqbal*.  Further, the claim is duplicative of plaintiff's more
specifically plead § 1983 claims for violation of federal rights.  *Minott v. Duffy*, 11 Civ. 1217
(KPF), 2014 U.S. Dist. LEXIS 49791, *19-20 (S.D.N.Y. Apr. 8, 2014) (Failla, J.) (explaining
that "the Court dismissed Plaintiff's first, catch-all claim for relief under § 1983 as
indistinguishable from his other, more specific claims[.]").  In the matter of *Lipford v. City of
Rochester, et al.*, 16-cv-6266 (FPG), this Court recently dismissed a similar claim:

> Here, Plaintiff's first cause of action broadly asserts that all
> Defendants violated his due process and free speech rights and his
> right to be free from seizure and arrest without probable cause,
> false criminal charges, excessive force, retaliatory prosecution, and
> abuse of process. These vague and conclusory statements do not
> give Defendants 'fair notice of what the . . . claim is and the
> grounds upon which it rests.

*Lipford v. City of Rochester*, No. 16-CV-6266-FPG, 2017 U.S. Dist. LEXIS 161262, at *10
(W.D.N.Y. Sep. 29, 2017)(quoting *Twombly*, 550 U.S. at 555 (citation omitted))(internal

citations to ECF docket omitted).  Here too, this first claim for relief fails to give defendants fair notice of what the claim is.  As such, it should be dismissed.

## II.     The Claims for Municipal Liability Fails

Plaintiff's sixth and seventh causes of action allege that he was injured by the City's failure to discipline police officers who (1) are alleged to have used excessive force against other people (sixth cause of action), and (2) are alleged to have fabricated "accounts of interactions with arrestees" (seventh cause of action).

To plausibly state a § 1983 claim against the City of Rochester, plaintiff must plausibly allege that a City policy or custom caused a deprivation of his federal rights.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  Plaintiff does not allege that he was injured by any City policy.  Rather, he claims to have been injured by the City's *failure* to discipline police officers, many of whom were not involved in his arrest, in prior cases not involving the plaintiff.  In other words, plaintiff claims that he has been injured by the City's deliberate indifference to its discipline of police officers concerning the use of excessive force and the making of false statements.

"In *City of Canton* [*v. Harris*, 489 U.S. 378 (1989)], the Supreme Court established the 'deliberate indifference' standard in the context of a claim for failure to train, but 'the stringent causation and culpability requirements set out in that case have been applied to a broad range of supervisory liability claims,' including claims for failure to supervise and failure to discipline." *Tieman v. City of Newburgh*, No. 13-CV-4178 (KMK), 2015 U.S. Dist. LEXIS 38703, at *55-56 (S.D.N.Y. Mar. 26, 2015)(quoting *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007)).  A claim for municipal liability is "at its most tenuous" when it is based upon a theory of deliberate indifference.  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  "Where, as here, a claim of

municipal liability is predicated upon a failure to act, the requisite degree of fault must be shown by proof of a background of events and circumstances which establish that the 'policy of inaction' is the functional equivalent of a decision by the city itself to violate the Constitution." *City of Canton v. Harris*, 489 U.S. 378, 394-95 (1989)(O'Connor, J., concurring in part and dissenting in part).  Further, "[w]here the proper response--to follow one's oath, not to commit the crime of perjury, and to avoid prosecuting the innocent--is obvious to all without training or supervision, then the failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise."  *Walker v. New York*, 974 F.2d 293, 299-300 (2d Cir. 1992).

Additionally, "[t]here are two ways to plausibly plead deliberate indifference with respect to failure to supervise/discipline." *Tieman*, 2015 U.S. Dist. LEXIS 38703, at *63.

> First, a plaintiff may plead (1) that there was a pattern of allegations of or complaints about similar unconstitutional activity and (2) that the municipality *consistently failed to investigate* those allegations.  Second, a plaintiff may plead (1) that there was a pattern of actual similar constitutional violations and (2) the municipality *consistently failed to discipline* those involved. However, what Plaintiff alleges here is (1) that there was a pattern of allegations of or complaints about similar unconstitutional activity and (2) that those allegedly involved were not disciplined. This does not plausibly plead a claim for deliberate indifference.

*Id.* (emphasis in the original).  Plaintiff fails to satisfy either of these manners of pleading his failure-to-discpline claim because he alleges a handful of <u>allegations</u> of misconduct, not actual violations, that did not result in <u>discipline</u>, but were, by plaintiff's own description, investigated.

### a.  The Sixth Claim for Relief Fails

Plaintiff's Sixth Claim for Relief alleges that his purported injuries are the result of the City's failure to discipline officers who have been alleged to have used excessive force.  This claim fails for a number of reasons.

First, plaintiff does not adequately allege a "pattern of allegations of or complaints about similar unconstitutional activity." The relevant pattern must have been in existence prior to plaintiff's injury—"contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide 'notice to the cit[y] and the opportunity to conform to constitutional dictates[.]'" *Connick*, 563 U.S. at 63 n.7 (citing *City of Canton*, 489 U.S. at 395)(O'Connor, J., concurring in part and dissenting in part)). As such, only those incidents that took place prior to September 18, 2014 could possibly give rise to a pattern of allegations of excessive force that might support a *Monell* claim.

Plaintiff identifies only eight allegations/complaints that occurred during the twelve years prior to his arrest.[1] Of those, only two, the arrests of Deshawn Fields and Emily Good, involves a defendant in this suit. This "paltry number of complaints (none resulting in an adjudication of liability), spread over a period so long in a city so large, hardly suggests the frequency or pervasiveness of the purported custom that is required to state a *Monell* claim." *Walker v. City of New York*, 12 Civ. 5902 (PAC) 2014 U.S. Dist. LEXIS 42272 (S.D.N.Y. Mar. 18, 2014) (Crotty, J.)(holding that identification of ten complaints of similar conduct alleged to have taken place over the preceding ten years was insufficient to make out a claim for municipal liability); *see also Whitfield v. City of Newburgh*, 08 CV 8516 (RKE), 2015 U.S. Dist. LEXIS 169667, *105-

---

[1] The seven alleged incidents are: (1) the use of force by Officers Ferrigno and Libertore to effect the arrest of Benny Warr on May 1, 2013 (*see* FAC ¶¶ 166-174); (2) the use of force by Officer Thomas Rodriguez against Lawrence Rogers on August 31, 2002 (*see* FAC ¶¶ 217-218); (3) the use of force by Officer Thomas Rodriguez against Ann Marie Sanders on May 7, 2010 (*see* FAC ¶¶ 219-220); (4) the use of force by Officer Alexander Baldauf to arrest Dwayne Ivery on August 17, 2013 (*see* FAC ¶¶ 236-239); (5) the use of force by Officer Joseph Ferrigno to arrest Robin Turner on September 12, 2010 (*see* FAC ¶¶ 245-246); (6) the use of force by Officer Joseph Ferrigno to arrest Darren Williams on May 11, 2012 (*see* FAC ¶¶ 248-249); (7) the use of force by Officer Mario Masic against Deshawn Keon Fields on August 7, 2009 (*see* FAC ¶¶ 259-263); and (8) the use of force by Officer Masic to arrest Emily Good on May 12, 2011 (*see* FAC ¶¶ 265-269).

106 (S.D.N.Y. Dec. 17, 2015) (Eaton, J.) ("Courts have made clear that, without more, a plaintiff's 'citation to various lawsuits involving . . . claims for the excessive use of force is not probative of the existence of an underlying policy' of a municipality or police department.'") (quoting *Jean-Laurent v. Wilkerson*, 461 Fed. App'x 18, 22-23 (2d Cir. 2012), and collecting additional cases); *Morris v. City of New York*, 12-CV-3959, 2013 U.S. Dist. LEXIS 154528, at *32 (E.D.N.Y. Oct. 28, 2013) (Gleason, J.) ("The fact that two of the defendants as well as a non-defendant supervising officer have had civil suits brought against them in the past that resulted in settlements is not even evidence of wrongdoing, let alone that the City has a custom or policy that fosters or results in wrongdoing."); *Collins v. City of New York*, 923 F. Supp. 2d 462, 479 (E.D.N.Y. 2013) (holding that a "litany of other police-misconduct cases" involving "settlements without admission of liability and unproven allegations" is "insufficient to make a plausible case for *Monell* liability."); *Mays v. Town of Hempstead*, 10-CV-3998, 2012 U.S. Dist. LEXIS 165062, *29-30, 2012 WL 5866230 (E.D.N.Y. Nov. 16, 2012) (Wexler, J.) (holding that citation of "names and complaints of other instances of alleged discrimination by the Town" is insufficient to establish a "pattern" of constitutional violations which might give rise to failure to train liability). Plaintiff's eight prior complaints spread over twelve years is hardly a "pattern" sufficient to support a *Monell* claim.

Second, even if plaintiff had set forth a "pattern" of prior similar complaints, still the claim fails because plaintiff does not plausibly allege that the City "consistently failed to investigate" those claims. Again and again in the complaint, plaintiff refers to the City's investigative process. *See* FAC ¶¶ 164-174 (outlining the City's internal investigations procedure, and drawing issue with the results of that procedure in the Benny Warr case); ¶¶ 193, 205, 206 (admitting that the City investigated the force used against Alexander Grassies and that

the City specifically insisted in that investigation that the subject officers account for whether their use of force was justified under department training and policy); ¶¶ 223-227 (admitting that the complaint of Rickey Bryant was investigated by the RPD).[2]  Although plaintiff contends that the Police Chief reviews only cases which involve "special facts and circumstances" rather than each and every complaint, plaintiff does not allege that the City "consistently failed" to investigate complaints of police use of excessive force.  *See* FAC ¶ 165.  Plaintiff's *Monell* claim fails for this reason as well.

Additionally, although plaintiff disagrees with the outcome of the RPD investigations in the *Warr* and *Bryant* matters, he fails to set forth any facts to plausibly indicate that the RPD investigations were flawed or to demonstrate any underlying constitutional violation.  Yet in the deliberate indifference context, plaintiff cannot allege a general failure to train or discipline. Rather, he must "identify a specific deficiency" in the City's investigative procedures "and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation."  *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004)(quoting *City of Canton*, 489 U.S. at 391).  Plaintiff's failure to do so is yet another reason why his claim for municipal liability cannot proceed.

As for *Tieman*'s other avenue of failure-to-discipline municipal liability—a pattern of substantiated constitutional violations which meet with a consistent failure to discipline— plaintiff simply does not allege a pattern of substantiated constitutional violations.  Indeed, plaintiff does not identify a *single* similar substantiated violation of constitutional rights—he

---

[2] Claims for municipal liability based upon a purported failure to train and discipline concerning the use of excessive force have been dismissed in both the *Warr* and *Bryant* cases.  *Warr v. Liberatore*, No. 6:13-CV-06508 EAW, 2017 U.S. Dist. LEXIS 143175, at *22-25 (W.D.N.Y. Sep. 5, 2017); *Bryant v. Ciminelli*, No. 6:16-CV-06766 EAW, 2017 U.S. Dist. LEXIS 117081, at *12 (W.D.N.Y. July 26, 2017).

cites mere allegations and complaints.  Thus, the sixth claim for relief fails both of the *Tieman* avenues to failure-to-discipline municipal liability.

Finally, this claim sets forth allegations concerning two prior incidents involving defendant Officer Mario Masic: the 2007 arrest of Deshawn Fields and the 2011 arrest of Emily Good.  Notably, the complaint is nearly devoid of allegations concerning any purportedly excessive force used by Officer Masic in these instances.  Regarding the Fields arrest, no description of the force used is provided, nor is it alleged that Fields ever made any claim or complaint of excessive force.  As to Emily Good, the alleged force is described as that necessary to bring her to the ground and arrest her.  The conclusory allegations concerning these two prior incidents are insufficient to state a failure-to-discipline claim against the City because "two incidents of excessive force do not amount to a policy or practice, and the additional allegations in the Complaint do not suffice to nudge these allegations into plausible Monell claims."  *Lipford v. City of Rochester*, No. 16-CV-6266-FPG, 2017 U.S. Dist. LEXIS 161262, at *21 (W.D.N.Y. Sep. 29, 2017). [3]

### b.  The Seventh Claim for Relief Fails

Plaintiff's seventh cause of action—alleging that his arrest was caused by the City's purported practice of failing to discipline officers for making false statements in arrest paperwork and in testimony—is even more thinly pleaded than his sixth cause of action.  Here, plaintiff refers to six arrests spread over 25 years (two of which appear to have happened <u>after</u> plaintiff's arrest at issue here) in which police allegedly made false statements.

---

[3] Plaintiff dedicates thirteen paragraphs of his already verbose pleading to allegations that the RPD planned to permit officers to attend a training by Bill Lewinski which, according to news reports cited in the complaint, was to take place on September 25, 2017.  *See* FAC ¶¶ 16-20; 147-156.  Plaintiff does not allege that any defendant officer attended or intended to attend this training.  Plaintiff does not explain how this training—scheduled to take place more than three years after his arrest—contributed in any way to his alleged injuries.  In short, plaintiff's allegations concerning Mr. Lewinski have no bearing whatsoever on any of his claims.

In only two of those cases—*People v. Hall*, 36 N.Y.S.3d 409 (Monroe Cty. 2016), and *People v. Stubbs*, 585 N.Y.S.2d 687 (Monroe Cty. 1992)—does plaintiff include citations to court decisions which, according to plaintiff, find that RPD officers gave false testimony. A review of those decisions, however, demonstrates that there was no finding of false statements by police. In the twenty-five-year-old *Stubbs* decision, the criminal court held a hearing after learning that a defense alibi witness had made a statement to an Officer Jackson, but the alibi statement was never provided to the defense. At the hearing, Officer Jackson testified that he had spoken to the alibi witness and made a report of the witness account. Officer Jackson further testified that he did not believe the witness's testimony and, after obtaining permission from a supervisor, he tore up the report. Ultimately, the criminal court found that this was an inappropriate destruction of potential *Brady* material, and dismissed the criminal case. While the decision makes clear that this was a failure to preserve evidence in violation of *Brady*, there is nothing in the decision to suggest that Officer Jackson ever made any false statements. Accordingly, this case cannot support the purported pattern of fabricated police statements alleged by plaintiff. *Cf. Connick*, 563 U.S. at 63 ("Because those incidents are not similar to the violation at issue here, they could not have put Connick on notice that specific training was necessary to avoid this constitutional violation.").

Similarly, in *People v. Hall*, the court did not grant a suppression motion because it found the officer's testimony incredible, as plaintiff alleges here. Rather, the *Hall* court determined, after crediting the officer's testimony, that the officer lacked legal grounds to request to enter the criminal defendant's home as the defendant was getting his identification. It was on this basis that the court suppressed the evidence found inside the home.

Plaintiff's misrepresentations of the analyses in the *Stubbs* and *Hall* cases call into question his summaries of those criminal court decisions that are not published and have not otherwise been made available to defendants or to this Court.

Further, in the *Redd*, *Warr*, and Good matters, discussed at FAC paragraphs 307-310, no finding has ever been made of a false arrest or false statements by police.  *Redd* was settled without any finding of liability, Good has never filed suit, and the *Monell* claim in *Warr* was recently dismissed on summary judgment.

Finally, the Second Circuit announced in *Walker v. New York*, 974 F.2d 293, 299-300 (2d Cir. 1992): "Where the proper response--to follow one's oath, not to commit the crime of perjury, and to avoid prosecuting the innocent--is obvious to all without training or supervision, then the failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise." The fabrication alleged by plaintiff is just the sort of conduct contemplated by this passage in *Walker*.  For this reasons too, plaintiff's seventh cause of action fails to state a claim for relief against the City of Rochester.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court grant their

motion for partial dismissal, and provide such additional and further relief as the Court deems

appropriate.


DATED: January 19, 2018                    TIMOTHY R. CURTIN
                                           CORPORATION COUNSEL


                                           _____/S/Patrick Beath_____
                               BY:   PATRICK BEATH, ESQ, of Counsel
                                     *Attorneys for Defendants*
                                     City Hall Room 400A
                                     30 Church Street
                                     Rochester, New York 14614
                                     (585) 428-6812

To:    ROTH & ROTH LLP
       Elliot Dolby-Shields, Esq.
       *Attorneys for Plaintiff*
       192 Lexington Avenue, Suite 802
       New York, New York 10016