```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

```
QUINTIN KEENE,

                    Plaintiff,
         -vs-                        No. 6:17-cv-06708-MAT
                                     DECISION AND ORDER
CITY OF ROCHESTER, et al.,

                    Defendants.
```

## I. INTRODUCTION

Represented by counsel, Quintin Keene ("Plaintiff") alleges that various Rochester Police Department ("RPD") officers used excessive and unlawful force against him, falsely arrested him, and subsequently fabricated official police paperwork and committed perjury in an attempt to cover-up this wrongdoing. Plaintiff seeks to hold defendant the City of Rochester (the "City") liable for the alleged wrongdoing of its employees, alleging that the City was deliberately indifferent to the unlawful use of force by RPD officers and that the City had a municipal policy or custom whereby RPD officers would file false "cover charges" against individuals who were insufficiently deferential when interacting with police.

Currently pending before the Court is a motion for partial dismissal of the Amended Complaint filed by the City. Docket No. 7.[1] In particular, the City seeks dismissal of Plaintiff's

---

[1] The City also filed a motion for partial dismissal of Plaintiff's original Complaint (Docket No. 3), and Plaintiff has filed a letter motion to permit discovery to proceed while the instant motion is pending (Docket No. 11). The City's motion for partial dismissal of the original complaint was mooted by the

first, sixth, and seventh claims for relief. For the reasons discussed below, the City's motion is granted as to Plaintiff's first claim for relief, and otherwise denied.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff commenced the instant action on September 18, 2017, in Monroe County Supreme Court. The matter was removed to this Court on October 13, 2017. Docket No. 1. After removal, the City filed a motion for partial dismissal of Plaintiff's original Complaint. Docket No. 3.

On December 12, 2017, Plaintiff filed an Amended Complaint, which is the current operative pleading in this matter. Docket No. 5. In the Amended Complaint, Plaintiff alleges that on September 18, 2014, he was lawfully present within a laundromat located on Genessee Street in the City of Rochester, when defendant RPD Officer Mario Masic ("Officer Masic") entered the establishment with his gun drawn and "without saying anything to [Plaintiff] or issuing a warning of any kind, rushed upon him, grabbed him by the collar of his shirt, picked him up, and slammed him onto a table." *Id*. at ¶¶ 31, 36. Plaintiff further alleges that Officer Masic then slammed his body into a wall. *Id*. at ¶ 40. Plaintiff, who was on the phone with his grandmother when Officer Masic entered the laundromat, alleges that he immediately placed his hands in the

---

filing of the Amended Complaint, while Plaintiff's letter motion is mooted by the Court's resolution of the instant motion. Accordingly, Docket Nos. 3 and 11 are denied as moot.

air and asked why he was being detained. *Id*. at ¶ 41. According to Plaintiff, Officer Masic refused to allow him to tell his grandmother that he was all right, stating that he was "going to hit" Plaintiff if he didn't put his phone down. *Id*. at ¶¶ 42-44. When Plaintiff protested this treatment, Officer Masic allegedly stated over his police radio that Plaintiff had a weapon and was resisting arrest and that Officer Masic required backup. *Id*. at ¶ 46-47. Plaintiff alleges that Officer Masic then slammed him into a wall again, sprayed him in the face and eyes with pepper spray, and struck him in the head and body. *Id*. at ¶ 48. Plaintiff further alleges that several other RPD officers subsequently entered the laundromat, slammed him to the ground, and handcuffed him. *Id*. at ¶ 49. After Plaintiff was handcuffed, he claims that several RPD officers, including Officer Masic, struck him, and that Officer Masic pepper sprayed him in the face from just inches away. *Id*. at ¶ 50. Officer Masic further allegedly told Plaintiff that he was going to shoot him if he did not "shut up and stop moving." *Id*. at ¶ 51.

Officer Masic transported Plaintiff to the Monroe County Jail following his arrest. *Id*. at ¶ 54. Plaintiff alleges that Officer Masic then fabricated his official police paperwork regarding his reasons for stopping, arresting, and using force against Plaintiff, and that Officer Masic forwarded that fabricated paperwork to the Monroe County District Attorney's office, thereby causing Plaintiff

to be wrongfully charged with one count of obstruction of governmental administration and one count of resisting arrest. *Id*. at ¶ 55. Plaintiff was detained at the Monroe County Jail for approximately 24 hours before being arraigned and released on his own recognizance. *Id*. at ¶ 56. Plaintiff was required to appear in criminal court on approximately five occasions in connection with these charges, both of which were ultimately dismissed. *Id*. at ¶¶ 81-82, 85-86. According to Plaintiff, Officer Masic committed perjury at a court hearing held in connection with the criminal charges against Plaintiff. *Id*. at ¶¶ 83-84.

Plaintiff alleges that, prior to the incident on September 18, 2014, the City and the RPD were on notice that Officer Masic and other RPD officers had repeatedly used excessive force against arrestees and had repeatedly fabricated official police paperwork in order to conceal their wrongdoing. *Id*. at ¶ 89. Nevertheless, according to Plaintiff, the City and the RPD failed to discipline Officer Masic or any of the other identified RPD officers in any way. *Id*. at ¶ 90. To the contrary, Plaintiff alleges that the City and the RPD have a "continuing custom or practice" of condoning unjustified uses of force by police officers, and that they have engaged in a "systemic failure to investigate use of force incidents or to discipline RPD Officers who use force without justification." *Id*. at ¶¶ 59, 94. Plaintiff further alleges that the RPD has an express policy or custom of filing false charges

4

against individuals who are insufficiently deferential when interacting with RPD officers. *Id*. at ¶ 306.

The City filed the instant motion on January 19, 2018, seeking dismissal of Plaintiff's first, sixth, and seventh causes of action. Docket No. 7. Plaintiff opposes the motion (Docket No. 8) and also filed a letter motion on February 14, 2018, requesting that discovery in this matter be permitted to proceed during the pendency of the instant motion (Docket No. 11).

**III. DISCUSSION**

**A. Legal Standard**

"To survive a motion to dismiss [made pursuant to Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a complaint need not provide "detailed factual allegations," it nevertheless must assert "more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action" will not suffice. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). The plaintiff must plead facts that "raise a right to relief above the speculative level on the assumption that all the allegations in

5

the complaint are true." *Id.* (citations omitted). For its part, the Court must accept, as true, all factual allegations in the complaint, and must draw all reasonable inferences in favor of the nonmovant. *Atwood v. Cohen & Slamowitz LLP*, No. 17-702-CV, 2017 WL 6403506, at *1 (2d Cir. Dec. 15, 2017).

In this case, the City seeks dismissal of Plaintiff's first, sixth, and seventh causes of action. Plaintiff's first cause of action is asserted against the City for "Deprivation of Federal Civil Rights Under 42 U.S.C. § 1983." Docket No. 5 at 20. Plaintiff's sixth cause of action seeks to impose municipal liability on the City for the defendant RPD officers' alleged unlawful use of force on Plaintiff, based on the City's alleged deliberate indifference to unconstitutional uses of force by RPD officers. *Id.* at 24. Plaintiff's seventh cause of action seeks to impose municipal liability on the City for the defendant RPD officers' alleged deprivation of Plaintiff's right to a fair trial, based on the City's alleged custom, practice, and policy of instructing RPD officers to file false charges against individuals who are insufficiently deferential during interactions with the police. *Id*. at 59. For the reasons set forth below, the City's motion is granted as to Plaintiff's first cause of action and denied as to Plaintiff's sixth and seventh causes of action.

### B. Plaintiff's First Cause of Action Fails to State a Claim

As set forth above, Plaintiff's first cause of action purports to assert a claim against the City for "Deprivation of Federal Civil Rights Under 42 U.S.C. § 1983." Docket No. 5 at 20. Without additional elaboration, Plaintiff contends in his first cause of action that the City, acting through its agents, servants, and employees, deprive him of his constitutionally protected rights to: (1) due process of law; (2) freedom from unreasonable searches and seizures; (3) freedom from being subjected to false criminal charges; (4) freedom from the excessive use of force; (5) freedom from police fabricating evidence; (6) a fair trial; (7) freedom from abuse of process; and (8) freedom of speech and expression. *Id*. at ¶ 104. The City argues, and the Court agrees, that this "catch all" claim by Plaintiff fails to adequately put the City on notice of the allegations against it.

"[T]o state a civil rights claim under § 1983, a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987). "Allegations that amount to 'nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983.'" *Lipford v. City of Rochester*, No. 16-CV-6266-FPG, 2017 WL 4344633, at *3–4 (W.D.N.Y. Sept. 29, 2017) (quoting *Alfaro Motors*, 814 F.2d at 887). This Court's decision in *Lipford* is instructive. There, as here, the

first claim set forth in the complaint was a "catch all" claim premised on § 1983, without further supporting detail. The Court granted the defendants' motion to dismiss this cause of action, explaining that these sort of "vague and conclusory statements do not give Defendants fair notice of what the . . . claim is and the grounds upon which it rests." *Id*. at *4 (internal quotation omitted). In this case, as in *Lipford*, Plaintiff's first cause of action fails to comply with the applicable pleading standards and does not adequately inform the City of the basis for the claims against it. As such, it must be dismissed.

> **C. Plaintiff Has Adequately Alleged Municipal Liability with Respect to the Allegedly Excessive Use of Force Against Him**

The City also seeks dismissal of Plaintiff's sixth causes of action. As set forth above, Plaintiff's sixth cause of action alleges that the City is liable for the constitutional violations of the RPD officer defendants under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), due to its custom, policy, and practice of condoning the excessive use of force by employees of the RPD. The City contends that Plaintiff has failed to allege facts that, taken as true, establish that the City was deliberately indifferent to constitutional violations by its employees. For the reasons discussed below, the Court finds that Plaintiff's allegations are sufficient to permit his sixth cause of action to proceed.

The Supreme Court's decision in *Monell* "extend[ed] liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). "*Monell*'s policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007). "Thus, 'where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a city policy or custom that is actionable under § 1983.'" *Collins v. City of New York*, 923 F. Supp. 2d 462, 476 (E.D.N.Y. 2013) (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004)); *see also Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995) ("A § 1983 plaintiff injured by a police officer may establish the pertinent custom or policy by showing that the municipality, alerted to the possible use of excessive force by its police officers, exhibited deliberate indifference.").

In this case, the Court finds that Plaintiff has adequately alleged that there was a pattern of RPD officers engaging in

9

unlawful, excessive uses of force, and that the City did not meaningfully respond to this misconduct, thus demonstrating the requisite deliberate indifference to establish a municipal custom or policy. Plaintiff has identified at least eight instances between 2002 and 2014 wherein RPD officers allegedly used excessive force in detaining arrestees. *See* Docket No. 5 at ¶¶ 217, 219, 236, 245, 248, 251, 259, at 265. Plaintiff affirmatively alleges that the City was aware of each of these instances and that it failed to perform a meaningful investigation into those instances and failed to discipline the involved officers, even where the alleged constitutional violations were blatant and preserved on videotape.

In addition, Plaintiff alleges that although the City publically claims to follow certain procedures in investigating excessive force complaints, it fails to follow these procedures. *Id*. at ¶¶ 164-65. Instead, Plaintiff alleges, the City's sole focus is in justifying the unlawful use of force by RPD officers, and that its investigatory procedures are shams intended to provide cover for the City's failure to discipline RPD officers who engage in constitutional violations. *Id*. at ¶¶ 179, 183. The Court finds that these allegations, which it is required to treat as true at this stage of the proceedings, are sufficient to state a claim under *Monell* with respect to the City's alleged deliberate indifference to the excessive use of force by its police officers.

10

*See, e.g., Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir. 1983) ("municipal inaction such as the persistent failure to discipline subordinates who violate civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of *Monell*"); *Collins*, 923 F. Supp.2d at 477 (claim that district attorney's failure to discipline subordinates who engaged in prosecutorial misconduct amounted to a custom or policy was facially plausible); *Guzman v. City of New York*, No. 08-CV-2853 FB VVP, 2010 WL 4025563, at *4 (E.D.N.Y. Oct. 13, 2010) (allegation that municipality was deliberately indifferent to false arrests made by police officers was sufficient to plead that plaintiff "was injured because of the City's failure to supervise and/or discipline its employees").

This matter is distinguishable from *Walker v. City of New York*, No. 12 CIV. 5902 PAC, 2014 WL 1259618, at *3 (S.D.N.Y. Mar. 18, 2014), where the court found that allegations of ten complaints of excessive use of force over the previous decade did not "suggest[] the frequency or pervasiveness of the purported custom that is required to state a *Monell* claim." *Walker v. City of New York*, No. 12 CIV. 5902 PAC, 2014 WL 1259618, at *3 (S.D.N.Y. Mar. 18, 2014). As a threshold matter, the decision in *Walker* relied in significant part on the size of New York City, a factor that is not present here. New York City is home to more than eight million people, while Rochester's population is roughly two hundred

11

and ten thousand. Eight specifically identified incidents of allegedly unlawful police conduct in Rochester is a fundamentally different proposition than a similar number of incidents in a city roughly 40 times its size.

Moreover, there is no indication in *Walker* that the plaintiff in that case was alleging deliberate indifference evidenced by a failure to discipline or supervise. To the contrary, the *Walker* court stated that a cause in which a police department failed to adequately investigation various complaints was "inapposite." *Id*. at *3. As such, *Walker* is not on point with respect to the adequacy of the pleading in this case.

The City, relying on *Tieman v. City of Newburgh*, No. 13-CV-4178 KMK, 2015 WL 1379652, at *17 (S.D.N.Y. Mar. 26, 2015), also contends that Plaintiff's claims against it are fatally flawed because Plaintiff acknowledges that the City investigated the allegedly unlawful uses of force identified in the Amended Complaint. However, the City's argument ignores the numerous allegations in the Amended Complaint regarding the flaws in the City's purported investigations. Plaintiff specifically alleges that the City's investigations were not independent or adequate, were improperly influenced by the RPD, and were ultimately merely shams designed to adopt without question the false justifications proffered by the involved RPD officers. *See, e.g.,* Docket No. 5 at ¶¶ 164-65, 179, 183. The *Tieman* court acknowledged that a

12

plaintiff alleging deliberate indifference due to a failure to supervise or discipline need only allege that "<u>meaningful</u> attempts to investigate repeated claims of excessive force are absent." *Id*. at *21 (emphasis added and quotation omitted); *see also Vann*, 72 F.3d at 1049 ("deliberate indifference may be inferred if . . . complaints [of excessive use of force] are followed by no <u>meaningful</u> attempt on the part of the municipality to investigate or to forestall further incidents") (emphasis added). In this case, the Court finds that Plaintiff has adequately alleged that the City did not engage in any meaningful investigation of the numerous identified allegations of excessive use of force, and that it did not engage in any effort to forestall any further incidents. Accordingly, the City's motion to dismiss Plaintiff's sixth cause of action is denied.

> **D. Plaintiff Has Adequately Alleged Municipal Liability with Respect to the Alleged Falsification of Charges Against Him**

The City further seeks dismissal of Plaintiff's seventh cause of action, which seeks to impose liability on the City for Officer Masic's alleged pursuit of false charges against Plaintiff. The City contends that Plaintiff has not sufficiently pled the existence of a municipal policy or custom regarding the fabrication of charges against wrongfully arrested individuals.

The City's argument is without merit. Plaintiff has affirmatively alleged the existence of a specific municipal custom

13

or policy of filing false charges against arrestees such as Plaintiff. In particular, Plaintiff alleges that former RPD Chief James Sheppard admitted that the RPD had a policy whereby police officers were instructed to file false charges against individuals who "failed to display the degree of deference or subservience demanded by [an] arresting officer(s)." Docket No. 5 at ¶ 306. The Court offers no opinion on the likelihood that Plaintiff will be able to prove this allegation at trial, but, at this stage of the proceedings, the Court is required to accept it as true. Moreover, Plaintiff has identified multiple specific instances in which he alleges that this policy was applied, at least one of which also involved Officer Masic. *See id*. at ¶¶ 307-310.

A municipal "policy or custom need not be memorialized in a specific rule or regulation." *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996). To the contrary, "a plaintiff may . . . prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 532 (S.D.N.Y. 2012). In this case, Plaintiff has expressly alleged that City policy-makers created, promulgated, and condoned a practice of filing false "cover charges" against individuals who were insufficiently deferential when interacting RPD officers. Plaintiff's allegations are sufficient to plausibly support the

inference that Officer Masic was acting pursuant to official policy or custom when he allegedly caused false charges to be levied against Plaintiff. As such, the Court finds that dismissal of the seventh cause of action is not warranted.

**IV. CONCLUSION**

For the reasons set forth above, the City's motion for partial dismissal of the Amended Complaint (Docket No. 7) is granted in part and denied in part. Specifically, the motion is granted with respect to Plaintiff's first cause of action and denied with respect to Plaintiff's sixth and seventh causes of actions. The City's motion for dismissal of the original Complaint (Docket No. 3) and Plaintiff's motion to permit discovery to proceed during the pendency of the City's motion (Docket No. 11) are denied as moot.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca

HON. MICHAEL A. TELESCA
United States District Judge

Dated: April 6, 2018
Rochester, New York